UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ARMANI ADAMES, on behalf of himself and other similarly situated employees, | ) CASE NO. 1:22-cv-00036-SO ) |
| | ) JUDGE: FLEMING |
| Plaintiffs, | ) ) |
| v. | ) **MEMORANDUM IN SUPPORT OF** |
| | ) **PLAINTIFF'S MOTION FOR** |
| RUTH'S HOSPITALITY GROUP, INC. | ) **CONDITIONAL CERTIFICATION,** |
| | ) **EXPEDITED OPT-IN DISCOVERY,** |
| | ) **AND COURT-SUPERVISED NOTICE** |
| Defendant. | ) **TO POTENTIAL OPT-IN** |
| | **PLAINTIFFS** |

**I.     INTRODUCTION**

On January 7, 2022, Plaintiff Armani Adames initiated this collective action against Ruth's Hospitality Group, Inc. (Defendant) as a result of Defendant's practices and policies of taking a tip credit for servers and runners for time spent performing non-tip supporting work, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.SC. 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wages Standards Act O.R.C. §4111.01 et seq. and Article II §34(a) of the Ohio Constitution.

Plaintiff pursues these claims as Representative Plaintiff, on behalf of himself and other similarly-situated employees.  He does so pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the Act for unpaid minimum wages, overtime compensation, and liquidated damages "may be maintained against any employer… by any one or more employees for and on behalf of herself or themselves and other employees similarly situated."

Section 16(b) of the FLSA specifies that "[n]o employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in

the court in which such action is brought." Thus, FLSA actions like this one are "collective actions," and require other affected individuals to "opt into" the litigation. *See Albright v. Gen. Die Casters, Inc.*, 5:10-CV-480, 2010 WL 6121689, *2 (N.D. Ohio July 14, 2010) ("under the FLSA a putative plaintiff must affirmatively opt into the class"); *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 WL 385580, *4 (N.D. Ohio Feb. 13 2009) (same).

Conditional certification is appropriately considered early in an FLSA collective action so that court-authorized notice can be given to potential opt-in plaintiffs. Notably, two other individuals, in addition to Representative Plaintiff, have already opted into this case by submitting a written consent. (See Declarations of Amanda Austin and Alexandria Penn, attached as Exhibits 2 and 3). Before additional individuals opt in, the potential opt-in plaintiffs need to be notified of the present collective action and their right to join this action. Only through proper notification will they have the opportunity to determine whether they would like to participate.

As shown below, Representative Plaintiff has amply satisfied the "modest factual showing" required for conditional certification and the issuance of notice. *Comer v. Wal-Mart Stores*, 454 F.3d 544, 546, 548 (6th Cir. 2006). Accordingly, the Court should conditionally certify this action as a collective action and order that notice be given to potential opt-ins of their right and opportunity to join in the action pursuant to 29 U.S.C. § 216(b).

II. **CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE TO POTENTIAL OPT-IN PLAINTIFFS IS WARRANTED UNDER SECTION 16(B) OF THE FLSA UPON A "MODEST FACTUAL SHOWING"**

Courts in this Circuit have recognized that a collective action under the FLSA "furthers several important policy goals." *Albright,* 2010 WL 6121689, at *1; *Jackson*, 2009 WL 385580, at *3. These goals, the court explained, were identified by the Supreme Court in *Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989):

> First, the collective action "allows... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." Second, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

*Albright,* 2010 WL 6121689, at *1 (quoting *Hoffman-LaRoche*, 493 U.S. at 170); *Jackson*, 2009 WL 385580, at *3 (same).

### A. Conditional Certification Enables the District Court to Exercise Managerial Responsibility Over the Notice Process

*Hoffman-LaRoche* held that in a collective action, the district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-LaRoche*, 493 U.S. at 170-71. In the Sixth Circuit and elsewhere, district courts routinely play an active role in the opt-in discovery and notice process. *Albright,* 2010 WL 6121689, at *2-3; *Jackson*, 2009 WL 385580, at *4-5; *Douglas v. GE Energy*, No. 1:07-cv-77, 2007 WL 1341779, at *8 (N.D. Ohio April 30, 2007); *Miklos v. Goldman-Hayden Cos., Inc.*, No. 99-CV-1279, 2000 WL 1617969, at *2 (S.D. Ohio Oct. 24, 2000); *Brown v. Money Tree Mortgage, Inc.*, No. 2651-JWL, 222 F.R.D. 676 (D. Kan. Aug. 23, 2004); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002); *Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp 2d 212, 215 (D. Mass. 2001); *Morisky v. Public Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 497 (D. N.J. 2000); *Realite v. ARK Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

### B. Managerial Control Over the Notice Process Should Be Exercised Early in the Case

*Hoffman-LaRoche* held that "it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Hoffman-*

3

*LaRoche*, 493 U.S. at 171. In *Jackson*, this Court catalogued the benefits of "early judicial intervention" in the notice process:

> In *Hoffman-LaRoche*, the Supreme Court also noted the "wisdom and necessity for early judicial intervention in the management of litigation." When dealing with a collective action, a "trial court can better manage [the] action if it ascertains the contours of the action at the outset." Additionally, "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."

*Jackson*, 2009 WL 385580, at *4 (citations omitted) (quoting *Hoffman-LaRoche*, 493 U.S. at 171-72); *Albright,* 2010 WL 6121689, at *2 (same). *See also Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979) (early facilitation of the opt-in process furthers the "broad remedial purpose" of the FLSA); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (conditional certification's sole effect is "to facilitate the sending of notice to potential class members").

Early facilitation of the notice process is essential to the opt-in plaintiffs as well. The benefits of an FLSA collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make an informed decision about whether to participate." *Hoffman-LaRoche*, *supra,* 493 U.S. at 170. *Accord Douglas*, 2007 WL 1341779, at *3; *Miklos*, 2000 WL 1617969, at *4.

Indeed, for potential opt-in plaintiffs, time is of the essence. Unlike Rule 23 class actions, the commencement of an FLSA collective action does not toll the running of the statute of limitations for putative class members. Rather, pursuant to the FLSA and the Portal-To-Portal Act, an opt-in plaintiff's claim against the employer is not commenced until the date his or her written consent to join the collective action is filed with the district court. *See* 29 U.S.C. §§ 216(b) and 256. *See Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464, 479 (D.N.J. 2000). The district

court's involvement "ensures that all potential plaintiffs receive timely notice of a pending suit." *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991). *Accord Hoffman-La Roche*, 493 U.S. at 170; *Miklos*, 2000 WL 1617969, at *3.

### C. Courts Generally Approve Conditional Certification and Notice Based Only Upon a "Modest Factual Showing"

Section 16(b) of the FLSA expressly authorizes a collective action to be maintained "by any one or more employees" on behalf of "themselves and other employees similarly situated." To determine "whether proposed co-plaintiffs are, in fact, similarly situated for the purposes of the statute's requirements," the courts "have used a two-phase inquiry." *Comer*, 454 F.3d at 546. *See also Ziemski v. P & G Hospitality Group, LLC*, No. 1:10-CV-2920, 2011 WL 1366668, *1 (N.D. Ohio Apr. 12, 2011) ("The Sixth Circuit expressed approval for the two-phase test developed by the district courts in the Sixth Circuit"); *Albright,* 2010 WL 6121689, at *2 ("courts have developed a two-stage approach"); *McNelley v. ALDI, Inc.*, 1:09-CV-1868, 2009 WL 7630236, *2 (N.D. Ohio Nov. 17, 2009) ("Courts generally use a two-stage approach"); *Jackson*, 2009 WL 385580, at *4 ("courts have developed a two-stage approach"); *Douglas*, 2007 WL 1341779, at *8 (this "court adopts the two-tiered approach"); *Harrison v. McDonald's Corp.,* 411 F.Supp.2d 862, 864-65 (S.D. Ohio 2005) ("[c]ourts have generally adopted a two-tiered certification approach").

As the Sixth Circuit explained in *Comer*, the first phase, which the court referred to as "the notice stage," "takes place at the beginning of discovery." *Comer*, 454 F.3d at 546. At this stage, the court conditionally certifies a class as a "collective action for notice purposes." *McNelley*, at *4. "The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546. At the second stage, "a court makes a final determination on whether class members are similarly situated based on a thorough review of the record." *McNelley*, at *4.

5

At "the notice stage," the representative plaintiff must show "only that 'his position is similar, not identical, to the positions held by the putative class members,'" and this determination "need only be based on a modest factual showing." *Comer*, 454 F.3d at 548 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 596 (S.D. Ohio 2002) (quoting *Viciedo v. New Horizons Computer*, 246 F.Supp.2d 886 (S.D. Ohio 2001)); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D. Ill. 1982)). The determination "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.'" *Comer*, 454 F.3d at 547 (quoting *Morisky v. Public Serv. Elec. & Gas Co.,* 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (quoting *Thiessen v. General Elec. Capital Corp.*, 996 F. Supp. 1071, 1080 (D. Kan. 1998); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)).

Courts, including this Court, find that the representative plaintiff's burden is minimal at the notice stage. *See Luster v. AWP, Inc.*, No. 1:16-CV-2613, *4 (N.D. Ohio July 25, 2017)(Plaintiff satisfies "slight" burden and entitled to conditional certification when alleging in complaint and declarations that she and opt-in plaintiffs were not compensated for drive time); *Houston v. Progressive Cas. Ins. Co.*, No. 1:15-CV-1853, 2015 WL 8527339, *1 (N.D. Ohio Dec. 11, 2015) (During the first stage, which typically takes place at the beginning of discovery, the standard for conditional certification is "fairly lenient."); *Ribby v. Liberty Health Care Corp.*, No. 3:13-CV-613, 2013 WL 3187260 (N.D. Ohio June 20, 2013) ("the notice stage is fairly lenient and places a low burden on plaintiffs"); *Albright,* 2010 WL 6121689, at *3; *Jackson*, 2009 WL 385580, at *4; *Douglas*, 2007 WL 1341779, at *8; *Harrison v. McDonald's Corp.,* 411 F. Supp. 2d 862, 864-65 (S.D. Ohio 2005); *Pritchard,* 210 F.R.D. at 595. *See also Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628 (D. Colo. 2002) (granting conditional certification based largely on the allegations of the complaint, where 3,000 potential opt-in plaintiffs existed).

### III. PLAINTIFF HAS SATISFIED HIS MODEST BURDEN OF SHOWING THAT THE POTENTIAL OPT-IN PLAINTIFFS IN THIS FLSA COLLECTIVE ACTION ARE SIMILARLY-SITUATED

More than sufficient information exists in the present collective action to establish that the potential opt-in plaintiffs are similarly situated such that prompt notice of the action should be given. First, Representative Plaintiff Armani Adames alleged in his Complaint and submitted a declaration stating that he and the potential opt-in plaintiffs are similarly situated. (See Exhibit 1, Declaration of Consent of Armani Adames). Second, Opt-In Party Plaintiffs Amanda Austin and Alexandria Penn have submitted declarations establishing that they are similarly situated to Representative Plaintiff and the potential opt-in plaintiffs. (See Exhibits 2 and 3).

In Representative Plaintiff's First Amended Complaint, he identified the collective class as all individuals who performed serving and running duties for Defendant in the State of Ohio. Plaintiff moves this Court to conditionally certify the following class:

> All former and current runners and servers employed by Defendant Ruth's Hospitality Group, Inc. at its Ohio locations at any time during the three-year period prior to the filing of this action to the present ("FLSA Class").

Representative Plaintiff and the class are similarly situated in several ways. First, they are/were employed by Defendant as runners and servers at its Ohio locations. (Doc.#1, at ¶¶23-28) Second, they were all tipped employees, who were paid an hourly wage by Defendant and received tips from customers. (Id. at ¶¶26-28). Third, Defendant subjected all its runners and servers to the same unlawful pay practices and policy of violating the tip credit provision of the FLSA, 29 U.S.C.§203(m) and paying them a tipped wage that was less than the full minimum wage under the law. (Id. at ¶¶29-33). Fourth, all servers and runners worked the same shifts and were paid the same rates. (Id. at ¶32). Fifth, the working conditions at all the Ohio locations was the same. (Id. at ¶33; Ex. 3, Declaration of Alexandria Penn who worked in the Columbus

7

location). Lastly, as a result of Defendant's practices and policy, all the members of the proposed class were not paid the full minimum wage under the law for all hours worked. (Id. at ¶¶58 and 63).

In addition to the allegations contained in the First Amended Complaint, Representative Plaintiff Armani Adames, and Opt In Plaintiffs Amanda Austin and Alexandria Penn provided Declarations which all set forth the side work they had to perform before and after the restaurant was open and serving customers. Importantly, all three Declarations state that all the runners and servers were required to perform the same duties. (*See* Exhibits 1, 2 and 3). The Plaintiff and Opt In Plaintiffs have also submitted supplemental Declarations, attached hereto as Exhibits 4, 5, and 6. In those Declarations, they explain their duties in more detail related to when tip producing work started. They note that they, and all other runners and servers, were required to work for substantial periods of time before the restaurant opened and that they did not start tip-producing work until their first guests arrived, often as late as 6:30 p.m., two hours after the restaurant opened.

Thus, Representative Plaintiff and the Opt In Plaintiffs have sufficiently alleged that they and the potential opt-in plaintiffs are similarly situated. *Reab,* 214 F.R.D. at 628; *Hane v. On Time Securing, Inc.*, No. 5:16-CV-2002, 2017 WL 4169646, at *4 (N.D. Ohio Sept. 20, 2017)(amended complaint and declarations of two (2) opt-ins sufficient for conditional certification); *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *1 (N.D. Ohio June 9, 2008)(conditional certification granted based on declaration of plaintiff and one (1) additional employee); *Ouellette v. Ameridial, Inc.*, No. 5:16-CV-2144, 2017 WL 2972636, at *4 (N.D. Ohio July 12, 2017)(conditional certification granted based solely on declaration of plaintiff and consent form showing one (1) potential opt-in); *Schwab v. Bernard*, No. 5:11CV1216, 2012 WL 1067074, at *4 (N.D. Ohio Mar. 28, 2012)(conditional certification

granted based on affidavits of plaintiff and two (2) employees); *Barnhill, et al. v. Renaissance Home Health Care, Inc., et al.*, No.: 1:17-cv-00815 (N.D. Ohio October 6, 2017)(conditional certification granted based on declarations of representative plaintiff and two employees); *Bauer v. Transtar Industries, Inc.,* No. 1:15-cv-2602, 2016 WL 1408830, *3 (N.D. Ohio 2016) (declaration of representative plaintiff and two (2) opt-in plaintiffs is sufficient "to meet the law threshold for showing they are similarly situated"); *Ziemski*, 2011 WL 1366668, at *2 ("affidavits of named Plaintiff and two opt-in Plaintiffs fulfills the 'modest factual showing'"); *Douglas*, 2007 WL 1341779, at *6 (two affidavits are "sufficient to warrant conditional treatment of the case as a collective action" and notice to the opt-in class); *Brown,* 222 F.R.D. at *19.

Moreover, the records produced by the Defendant establish a policy and practice of having runners and servers perform side work prior to, during, and after engaging in tip-producing work. Defendant's job description for runners, which is applicable to all Ohio locations, indicates that essential job functions include, "[s]ets up the front line with the equipment, plateware and smallwares needed to effectively serve all food products," [c]orrectly completes closing duties at the end of each shift, " and [c]ompletes all side work in the front and/or back of the house as assigned and scheduled by the members of the management team." See, Runner Job Description (RHGI 000001-000003), attached as Ex. 7.

The job description applicable to all servers at Defendant's Ohio locations has similar side work requirements, "[o]btains station assignments from host/hostess or Manager-On-Duty at the start of the work shift; correctly completes all assigned opening and side work duties in a timely manner, " and "[c]loses station only upon direction from Manager-On-Duty; correctly

9

completes all closing, sidework and checkout duties in a timely manner." See, Server Job Description (RGHI 000004-000006), attached as Ex. 8.

Defendant also produced operations manuals which included required job duties for runners and servers. In those manuals, Defendant requires its runners to "complete all opening and closing sidework as instructed by management." RHGI 000053, 000074, attached as Ex. 9. Defendant requires its servers to conduct "Closing/Side Duties" such as refilling sugar caddies. RHGI 000209, 000229, attached as Ex. 10. In the generally applicable "FOH [front of house] Service Standards", all runners and servers are required to perform sidework such as opening, on-going and closing sidework. RHGI 000124, attached as Ex. 11.

Defendant's records also establish a class-wide practice of paying a tip-credit wage. Defendant's production, RHGI 000287-000290, shows that Defendant employed 165 people as runners or servers in its three Ohio locations in the three years prior to January 7, 2022 (the filing of the Complaint). Of those, 159 were paid a tip-credit wage. Employee List, attached as Ex. 12.

Lastly, Defendant produced time records for the Plaintiff and the Opt-in Plaintiffs that establish a pattern of performing pre and post shift side work prior to after the restaurants scheduled hours. In RHGI 000291-000293, the records show that the Plaintiff and Opt-in Plaintiffs routinely arrived before the opening of the restaurant. See, Time Sheets, Ex. 13. All three Ohio locations opened for business at 4:30 p.m. and closed around 10:00 p.m. (See, supplemental Declarations, Exs. 4, 5, and 6) The time records for the Plaintiff (runner) shows that he routinely clocked in several hours prior to the opening of the restaurant and clocked out an hour or more after it closed. The records for the Opt-in Plaintiffs (servers) show that they routinely clocked in 30 minutes or more before the restaurant opened and an hour or two after it closed. It must also be noted that the official opening and closing times of the restaurants is not

10

indicative of the start and end of tip-producing work. Typically, customers would not arrive right when the restaurant opened or stay until it closed. In fact, the Supplemental Declarations state that servers often did not get a table until 6:30 p.m.

The combination of the Declarations and Defendant's records, establish that there was a company-wide policy and practice of paying its servers and runners a tip credit wage while also requiring them to perform side work unrelated to tip producing duties serving customers. At this stage, the Court must not engage in a determination of any issues of fact or law but must determine if the Plaintiffs have met their modest burden of showing that the proposed class is similarly situated.

### IV. NOTICE BY TEXT MESSAGE SHOULD BE PERMITTED

Due to clear and known issues with mail delays and errors related to the U.S. Postal Service, the prevalence of the use of cell phones in today's society, the migratory nature of workers, and given the FLSA's remedial purpose, issuance of notice by text message and/or email have become important additional methods and, indeed, "[t]here is no sound reason not to do so here." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012); *see also Denney v. Lester's, LLC*, 2012 WL 3854466, *4 (E.D. Mo. Sept. 5, 2012); *Millin v. Brooklyn Born Chocolate, LLC*, No. 19-CV-3346, 2020 WL 2198125, *3 (E.D.N.Y. May 6, 2020); *Thrower v. Universal Ensco*, No. 3:19-cv-68, 2020 WL 5258521 (S.D. Tex. Sept. 3, 2020). In fact, on October 29, 2021, in *Pryke v. First Solar*, *Inc.*, Judge Carr authorized notice via text message in addition to longform notice via ordinary mail. *See* No. 3:21-cv-00681-JGC, 2021 WL 5027565 (N.D. Ohio Oct. 29, 2021). Judge Carr explained as follows:

> Finally, I reject entirely defendant's desire to limit delivery of notice to potential opt-ins via the U.S. Postal Service. The FLSA is a remedial statute, and courts properly apply it with an attentive eye to ensure that they fulfill its remedial objectives. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015)

>  ("Courts interpreting the FLSA must consider Congress's remedial purpose."). To accomplish that objective, the parties should use the most effective – not the least effective – possible methods to provide meaningful and effective notice to the potential plaintiffs. **To restrict service options to a Nineteenth Century mode of delivery would be contrary to the FLSA's remedial purpose**.
>
>  *Id*. at *2-4. (Emphasis added.)

In addition, this month, Judge Benita Pearson, ordered that notice be issued by text message after finding that "text messaging is an effective and efficient method of providing timely notice, especially given what is believed to be the average age of the former and current servers working at Defendants' two facilities (18 to 34 age range) in the proposed conditionally certified class." *DeWitt v. Gervasi Vineyard & Italian Bistro*, Case No. 5:22-cv-426 BYP (N.D. Ohio October 7, 2022), attached as Ex. 14. Similar to this case, *DeWitt* involves claims of improper use of a tip credit wage by a restaurant defendant.

Simply put, to further the goal of the Notice being "timely, accurate, and informative," the Notice in this case should be sent by both mail, email and text. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989). By 2025, it is estimated that 85% of the population in the United States will use a mobile device and that connections used by those devices, as opposed to the use of a personal computer, will account for over 72% of internet usage. See, *https://www.cnbc.com/2019/01/24/smartphones-72percent-of-people-will-use-only-mobile-for-internet-by-2025.html*; citing statistics from the GSMA Intelligence mobile trade group. The use of cellular or mobile phones has become the dominant choice of communication for most people. And, how messages are received has also changed. Email messages were quick, inexpensive, and effective means of communicating important information. Courts recognized this and adopted it as a means of sending approved notices of court filings and collective or class action notices. However, email is no longer effective for most people.

According to Smart Insights, a leading digital marketing company, the rate at which people open email messages across all industries is only 20%. See, *https://www.smartinsights.com/email-marketing/email-communications-strategy/statistics-sources-for-email-marketing/*. Worse yet are the rates at which people open links within emails to access content, which is only 10.29%. *Id*. On the other hand, 98% of text or SMS[1] messages are read within three minutes. See, *https://www.smscomparison.com/mass-text-messaging/2022-statistics/*. It is clear that text messaging is a much more effective method of providing notice to the proposed class.

Furthermore, the perception that text messaging is invasive is not accurate. SMS Comparison, a digital marketing research company, found that 90% of people prefer to receive marketing text messages as opposed phone calls or emails from companies. See, *https://www.smscomparison.com/mass-text-messaging/2022-statistics/*. A survey conducted by OpenMarket, a digital marketing consulting firm, found that 76% of people aged 18 to 34 prefer texting because it is **less** invasive than other messages. https://www.openmarket.com/resources/millennials-still-love-text/.

Just as the business industry must be aware of emerging trends to be as efficient as possible in communicating with the public, so too must the court system. Recognizing this, various courts have adopted SMS or text messaging to communicate with the public. For instance, the Florida courts utilize a mobile phone HELP app to provide forms, links, and instructions. See, *https://help.flcourts.org/Other-Resources/Florida-Courts-HELP-App*. The Cuyahoga County Domestic Relations Court now uses a mobile app called CourtConnect which includes a service that sends text message reminders about court appointments. See, *https://domestic.cuyahogacounty.us/en-US/SYN//92333/NewsDetailTemplate.aspx*. And the

---

[1] SMS stands for "short message service" which is a system designed to send short digital messages between cell phones or from a computer to a cell phone.

United States Bankruptcy Court uses the CHAPMobile app to communicate with the public regarding calendars, case information, and hearings. See,

*https://www.ohnb.uscourts.gov/content/chapmobile-information.*

Plaintiff respectfully requests that the Court look to the requirements that notice be "timely, accurate, and informative" and provide for distribution that is most able to meet the criteria. *Hoffman-Laroch, Inc., v. Sperling*, 493 U.S. 165, 172, 110 S.Ct. 482 (1989). Electronic mail has been proven to be less informative and more inefficient than text messaging. Since there is very little expense to sending notice by electronic mail, Plaintiff proposes that this method still be used. Therefore, Plaintiff requests that notice be sent by regular mail, electronic mail, and text message. See, Proposed Text Notice, Ex. 15.

**V.      CONCLUSION**

For the foregoing reasons, Representative Plaintiff respectfully requests that this Honorable Court conditionally certify the proposed FLSA class and implement a procedure, set forth in the accompanying proposed order (*see* Exhibit 16), whereby potential opt-in plaintiffs are notified of Plaintiff's FLSA claims by issuing the Notice to Potential Class Members attached hereto as Exhibit 17, and given an opportunity to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

*Respectfully submitted,*

 /s/ Robert B. Kapitan
Robert B. Kapitan (0074327)
Anthony J. Lazzaro (0077962)
Lori M. Griffin (0085241)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000

        Facsimile: 216-696-7005
        robert@lazzarolawfirm.com
        anthony@lazzarolawfirm.com
        lori@lazzarolawfirm.com

        Don J. Foty (TX 24050022)
        Admitted to the Northern District of Ohio
        4409 Montrose Blvd., Ste. 200
        Houston, Texas 77006
        (713) 523-0001 - Telephone
        (713) 523-1116 - Facsimile
        dfoty@hftrialfirm.com

        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

     I hereby certify that on October 14, 2022, a copy of the foregoing was filed electronically. Notice will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

        /s/ *Robert B. Kapitan*
        One of the Attorneys for Plaintiff