**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ARMANI ADAMES,** | ) | |
| | ) | CIVIL ACTION NO.: |
| **Plaintiff,** | ) | 1:22-cv-00036-CEF |
| | ) | |
| **vs.** | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| **RUTH'S HOSPITALITY GROUP, INC.,** | ) | **DEFENDANT'S RESPONSE TO** |
| | ) | **PLAINTIFF'S SUPPLEMENTAL** |
| **Defendant.** | ) | **BRIEF** |
| | ) | |

## I.    INTRODUCTION

Plaintiff's supplemental brief is simply an attempt to get a second bite at the apple. Indeed, plaintiff frames his argument as a renewed motion to compel records from defendant, which this Court previously rejected as untimely filed. Additionally, plaintiff's argument that he is entitled to a class list containing contact information as well as merits discovery such as time and pay data for his proposed, overbroad class is neither endorsed by *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), nor warranted given plaintiff's own deposition testimony and discovery which reveal that he cannot meet the heightened burden that there is a "strong likelihood" that he is similarly-situated to the servers and runners he seeks to represent. Finally, plaintiff's equitable tolling request also should be rejected because the Court has no jurisdiction over absent class members and plaintiff does not have standing to litigate this issue on behalf of absent class members.

## II.    RELEVANT BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant employed plaintiff as a food runner (not a server as he claims in his brief) in its Cleveland, Ohio restaurant from October 2019 to March 2020, after which it permanently closed

as a result of the pandemic. (Ex. A, Deposition of Armani Adames ("Adames Dep") at p. 13). Adames, who customarily received tips from guests in his role as a runner, claims that defendant took a "tip credit" with respect to his compensation, and that he spent more than 20% of his working time performing so-called "non-tipped duties." (Dkt. 9 at ¶ 8). Based on these allegations, he claims defendant violated the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA") by not paying him the full minimum wage. Adames seeks to represent a class not just of runners in Cleveland, but of servers as well (a position he never held), and for all of defendant's Ohio locations.

Following the filing of plaintiff's Complaint in January 2022, the Court set a deadline of August 31, 2022 for the parties to conduct discovery on issues related to class certification. (Dkt. 18). The Court later extended the discovery deadline to September 21, 2022. (Dkt. Entry 9/2/2022). During that time, the parties exchanged written discovery and defendant took plaintiff's deposition. The parties disagreed as to the proper scope of discovery, including whether plaintiff was entitled to a class contact list and time and pay records for plaintiff's proposed class. On October 12, 2022, the Court conducted a status conference specifically to address plaintiff's entitlement to these records and denied plaintiff's request as untimely under the applicable rules, as he had waited too long past the extended discovery deadline to seek an order from the Court to compel defendant to produce these records. (Dkt. Entry 10/22/2022).

During the discovery period, plaintiff also expressed to the Court his desire to file a motion to toll the statute of limitations. As a result, the Court set a briefing deadline for plaintiff's motion to be filed no later than September 12, 2022, with defendant's opposition due by October 3, 2022. (Plaintiff never filed a motion requesting the statute of limitations in this case to be tolled. (Dkt. Entry 9/2/2022).

III.     <u>**ARGUMENT**</u>

A.     <u>**The Entire Subject of Plaintiff's Brief Is Moot As the Court Has Already Ruled That Plaintiff Has Waived His Right To Contact Information and Time and Pay Data for Plaintiff's Proposed Class**</u>

Plaintiff attempts to use this brief as an opportunity to resurrect the discovery dispute that already was resolved by this Court. As explained above, during the several month discovery period over a year ago in this case, the parties exchanged written discovery. As part of plaintiff's requests, he sought, among other things, a roster, including contact information, for his proposed class of servers and runners. (Dkt. 25-2, Request No. 2). He also sought time and pay data for this overbroad, proposed class. (Id., Request No. 4). On August 8, 2022, defendant produced to plaintiff an anonymized list of employees who worked for defendant as a server or runner in the last three years and identified each of those employee's work location, job title, hourly rate, and dates of employment; but objected to plaintiff's request for the contact information and time and pay data for the proposed class. (Id.). More than two weeks following the September 21, 2022 discovery deadline, plaintiff sought court intervention related to defendant's objections for these records. On October 12, 2022, the Court conducted a status conference to address plaintiff's entitlement to these records and ruled as follows:

> This Court previously extended the conditional certification discovery deadline to September 21, 2022. Plaintiff waited until October 6, 2022 to bring his dispute to the Court, which is outside the 10-day dispute window prescribed by Local Rule 37.1. Accordingly, Plaintiff's request pertaining to the documents is hereby DENIED. (Dkt. Entry 10/12/2022).

As such, plaintiff's request for these records already has been rejected by this Court, and plaintiff should not be permitted to use *Clark* to overcome his own failures to follow applicable procedural rules in the case. For this reason alone, plaintiff's request to compel these records should be rejected.

**B.**     ***Clark* Does Not Endorse Plaintiff's Records Request And His Own Testimony Demonstrates That He Seeks Discovery For Other Employees With Whom He Is Not Similarly Situated**

Even if plaintiff is not foreclosed from obtaining these records based on the Court's previous ruling, he still is not entitled to the documents he now seeks. *Clark* does not endorse plaintiff's request and plaintiff's own testimony demonstrates that he is dissimilar to the broad group for which he seeks discovery.

      **1.**     ***Clark* Does Not Authorize Plaintiff To Obtain Broad, Unsupervised Discovery On Employees Who *Might* Be Similarly Situated To Him**

Plaintiff contends that *Clark* entitles him to unsupervised access to putative class members to discover information about the tasks they performed while working for defendant as well as information related to their timekeeping and compensation. In support of his request for this broad discovery of the putative class, plaintiff incorrectly claims that the *Clark* court held that notice should be issued to those who "*might* be similarly situated to Plaintiff." (Dkt. 25, Pl's Br. at p. 4). That is not the holding. Rather, the *Clark* court held that, for there to be court-facilitated notice to potential plaintiffs, a plaintiff must move for such notice and, in his motion, must show a "strong likelihood" that other employees *are* "similarly situated" to him. *See Clark*, 68 F4th at 1011 (citations omitted) (emphasis added); *see also McCall v. Soft-Lite*, No. 5:22-cv-00816, 2023 WL 4904023, *5 (N.D. Ohio Aug. 1, 2023) (admonishing plaintiff (represented by same counsel as here) for ignoring the *Clark* court's actual holding in the same manner plaintiff does in his brief).

Plaintiff further mischaracterizes *Clark* by pointing to Judge White's *dissent* for the proposition that the new standard is not necessarily higher than all prior applications of the earlier lenient standard. (Pl's Br. at p. 5). Again, that is not the law, as the *Clark* majority explicitly declared a heightened burden for plaintiff to demonstrate that other employees are similarly situated to him. *Clark* at 1011. At bottom, the *Clark* court made clear that there has to be a finding

of a "strong likelihood" that plaintiff is similarly situated to "other employees" <u>first</u>, and then court-facilitated notice follows <u>second</u> if the requisite showing has been established—not the other way around.

Moreover, the *Clark* court cautioned that the district court's facilitation of notice "must not 'in form or function' resemble 'the solicitation of claims.'" *Clark* at 1010 (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 174 (1989)). Plaintiff's request for the names and contact information of the putative class members could not be viewed as anything other than an attempt to improperly use FRCP 26 as a marketing plan to solicit claims. Indeed, defendant already has produced to plaintiff an anonymized list of employees who worked for defendant as a server or runner in the last three years and identified each of those employee's work location, job title, hourly rate, and dates of employment. Plaintiff has not articulated how having the names and contact information for these employees will aid him in demonstrating a "strong likelihood" that he is similarity-situated to other employees. Rather, he points to two recent district court cases that are factually and procedurally distinct to disingenuously posit that production of an employee lists of names and contact information is now <u>required</u> under the new *Clark* standard. (Pl's Br. at p. 6). But, even plaintiff begrudgingly acknowledges, neither the *Jones* nor *McCall* courts issued orders compelling defendants to produce these records. (Id. at p. 7).

Providing a contact list now, prior to any determination of similarity, opens the door for plaintiff to contact these individuals with unfettered opportunity. Indeed, plaintiff's counsel has already demonstrated solicitation with its website's "Wage Theft Survey" and messages to "STOP STEALING OUR WAGES" and "STOP WAGE THEFT!"



The Lazzaro Law Firm LLC, https://www.lazzarolawfirm.com/ (last visited August 14, 2023).

While the *Clark* decision made clear that the Court was to avoid the solicitation of claims, notably nowhere does Adames propose any limits on his ability to do precisely that. He does not describe what he intends to do with any contact list. He proposes no limited list of questions. He describes no limits on what might be said in emails or in telephone calls. His proposal turns *Clark* on its head by replacing court-supervised notice with completely unsupervised access. If plaintiff's counsel, for example, were to send the solicitation survey on their website, the court would be facilitating solicitation on a host of issues Adames has never raised. Any class contact should be done only with court approval and/or coordination with defense counsel.

Defendant understands that plaintiff could contact potential class members via other, unsupervised methods—as he has presumably already done so, given the declarations he submitted on behalf of two other former employees in support of his motion for conditional certification. However, plaintiff cannot deny that there is a significant difference between a door-to-door or telephone interview campaign to gather other employees, and defendant producing a list of contact information and giving plaintiff the ability to reach hundreds of individuals simultaneously.  To be sure, plaintiff could have spent the past year and a half—and certainly the time when this case

was stayed while waiting for *Clark*—convincing other employees to join the litigation. The fact there have been no others beyond the plaintiff is telling enough.

> **2.**      **Plaintiff's Own Testimony Demonstrates That He Is Trying To Obtain Time And Pay Data For Employees To Which He Is Not Similarly Situated**

Plaintiff argues that he is entitled to pay and time records for all runners and all servers in all three Ohio restaurants because that information "reasonably relates to the question of whether employees are similarly situated to [p]laintiff." (Pl's Br. at p. 8). But, plaintiff's own deposition testimony and records already produced demonstrate that's not true. Plaintiff admitted he only ever worked for defendant as a runner (and a trainer to other runners), never a server. (Adames Dep. at p. 32).[1] Critically, he admitted that, as a runner, he could not perform simple, fundamental server functions. He did not take customer drink orders. (Id. at pp. 28-29, 55). He did not take customer dinner orders. (Id.). He did not enter customer orders into the points of sales system. (Id.). In fact, as a runner, he did not even have access to defendant's point of sale system. (Id.). Yet, he is looking to dissimilar positions, to argue that he is entitled to time records, including "ticket" times, contained in a point of sales system he admits to not even having access to in his role as a runner.

Plaintiff also argues that the time records would tend to prove or disprove that servers and runners worked for lengthy periods of time before and after the restaurant was open or closed when servers and runners could not be performing tip-generating work. To be sure, plaintiff claims that

---

[1] Plaintiff's attempt to create confusion about his position as a runner does not appear to be inadvertent. He claimed to have worked in a server role in his initial Complaint (Dkt. 1 at ¶ 23), while correcting it in his Amended Complaint (Dkt. 9 at ¶ 23) and also admitting at deposition that he only ever worked as a runner. (Adames Dep. at p. 32). Yet, plaintiff disingenuously opens his supplemental brief by claiming that he initiated the lawsuit "as a result of Defendant's practices and policies of improperly paying its servers, including Plaintiff and other similarly-situated employees, a tip-credit wage for performing significant side-work." (Pl's Br. at p. 1).

all runners and servers were scheduled to work an hour before the restaurant opened. But, that is not what plaintiff testified to nor do his time records reflect that:

> Q: You testified before that when you came in at 1:30 or 2:00, it was the chef in the back and you, is that correct?
> **A: Correct.**
> Q: When would other people start working at the restaurant?
> **A: When it opened. The servers came in a little bit before they opened.**

(Adames Dep. at p. 32. *See also, e.g.*, Adames Dep. at pp. 34-36 (agreeing that his time records as a runner accurately reflect shifts in which he punched in at 5:00 p.m.—an hour <u>after</u> the restaurant opened—and 5:36 p.m.—an hour and a half <u>after</u> the restaurant opened)). Adames' own testimony shows that the claim in his brief of a uniform policy requiring runners and servers to come in an hour early is simply untrue.

Moreover, contrary to plaintiff's bald assertion that time records would demonstrate how much time was spent prior to and after engaging in tip-producing work, those records, as plaintiff even admits, would not reflect the occasions where he would continue to tend to customer needs after the restaurant had technically closed for the evening (Adames Dep. at pp. 37-38), nor would they reflect the non-working time for which plaintiff was paid for things like sitting and eating "Employee Meal" at the beginning of service. (Ex. B, Nourjian Dec. at ¶¶ 4-5).

As explained above, *Clark*'s new "strong likelihood" standard requires a finding that plaintiff is similarly situated to "other employees" <u>first</u>, and then court-facilitated notice follows <u>second</u> if the requisite showing has been established. Plaintiff cannot be permitted at this juncture to look to admittedly dissimilar positions to argue that he is entitled to pay and time records as an end run around his heightened burden of demonstrating that there is a strong likelihood that he is similarly situated to the servers and runners in the three Ohio restaurants that he seeks to represent.

### C.    <u>Plaintiff's Request For Equitable Tolling Should Be Denied</u>

Just as plaintiff waived his right to seek a motion compelling defendant to produce certain documents, he similarly has waived the right to seek equitable tolling by failing to file a motion by the Court's prescribed September 12, 2022 deadline.

Plaintiff also infers significantly more than what is actually stated in *Clark* regarding the appropriateness of equitable tolling. Plaintiff selectively quotes the concurrence when he states that the *Clark* panel agreed that tolling should be "freely" granted. *See Clark*, 68 F.4th at 1017 (that language is found in Judge White's concurrence, where she simply agrees with Judge Bush). But, Judge Kethledge's opinion—<u>the</u> majority opinion—says nothing at all about tolling, despite having the opportunity to do so. Importantly, the two concurring opinions that do address tolling do not contend that a district court must grant equitable tolling without applying the requisite test to determine that it is appropriate. *See, e.g.*, *Clark* at 1015 (Judge Bush ending his concurrence with, "[i]t would therefore be appropriate for the district court on remand to <u>consider the application</u> of equitable tolling.").

The Court should deny plaintiff's request for equitable tolling for two reasons: first, a ruling on equitable tolling at this juncture would be a prohibited advisory ruling to non-parties in the case; and second, plaintiff does not have standing to raise the issue on behalf of employees who have not yet joined the action as party plaintiffs. One recent Northern District of Ohio court, "persuaded that well-recognized principles of jurisdiction and standing are always applicable," denied plaintiffs' tolling requests on these grounds. *McCall v. Soft-Lite, LLC*, 2023 WL 4904023 at *11. As to jurisdictional considerations, the *McCall* court concluded, "until this Court has jurisdiction over a particular party who has opted in, any ruling on equitable tolling with respect to such party's claims would be a prohibited advisory ruling." *Id.* As to standing, the *McCall* court further determined that the plaintiff and three opt-ins who were currently parties to the case "have

no standing to raise the issue on behalf of *potential* plaintiffs because, as pointed out by the court in *Clark*, this FLSA action 'is not representative[.]'" *Id.* (quoting *Clark*, 68 F.4th at 1009); *see also Jones v. Ferro Corp.*, No. 1:22-vb-00253, 2023 WL 4456815, *7 (N.D. Ohio July 11, 2023) (denying plaintiff's request for equitable tolling, in part, because it questioned whether plaintiff had standing to seek tolling on behalf of absent class members). For these additional reasons, plaintiff's equitable tolling request should be denied.

IV.    **CONCLUSION**

For the foregoing reasons, plaintiff's resurrected motion to compel defendant to produce contact information and time and pay records for a putative class of other employees who plaintiff admits are not similarly situated to him should be denied. His request for equitable tolling for putative class members who are not parties to the lawsuit should also be denied. Defendant also requests that dates set by the Court in its May 19, 2022 scheduling order be vacated a status conference be scheduled to discuss an amended scheduling order.

By: s/  *Gregory V. Mersol*
Gregory V. Mersol (0030838)
Carrie Valdez (0094004)
BakerHostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114-1214
(216) 621-0200
gmersol@bakerlaw.com
cvaldez@bakerlaw.com

*Counsel for Defendant*