UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ARMANI ADAMES, on behalf of himself and other similarly situated employees, | ) CASE NO. 1:22-cv-00036-SO )  ) JUDGE: FLEMING |
| Plaintiffs, | ) ) |
| v. | ) **SUPPLEMENTAL REPLY BRIEF** ) |
| RUTH'S HOSPITALITY GROUP, INC. | ) ) ) |
| Defendant. | ) ) |

Defendant's Response regarding the impact of *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) on this case amounts to nothing more than an argument that Plaintiff should not be permitted additional discovery (contact information for potential witnesses/the putative class) because Defendant wants the prejudicial advantage of being the only party with that information. The most telling sentence of the Response is on page 6 when the Defendant acknowledges that Plaintiff has a right to interview potential witnesses via "unsupervised methods" but should not be provided contact information because Plaintiff would then be able to contact them "simultaneously," which is nothing more than Defendant has been able to do.

There is no need to spend considerable time on Defendant's first argument, in subpart A of the Response, that the Parties should be limited to the discovery already conducted last year under the pre-*Clark* lenient standard. It entirely lacks any factual or legal support. Defendant merely recites the procedural history of the case and states that the Court has already dealt with the issue of producing pay and time records for the putative class. This completely ignores the Court's Order

to brief the issue of "*Clarke's* application to this matter and the collective Plaintiff seeks to certify." As argued by the Plaintiff in his Supplemental Brief, the *Clark* decision heightened the standard to obtain court-approved notice, a point that is not in dispute. Discovery that was requested and produced last year under the lenient standard was not conducted with an eye to meeting the strong likelihood standard. It would be highly prejudicial to force Plaintiff to meet this new, higher burden based on that discovery. Defendant seemingly acknowledges this in its second argument.

In subpart B of the Response, Defendant takes issue with Plaintiff's statement about the heightened standard established in *Clark*. The Parties certainly have disparate views on the new standard, but that is an issue for an eventual motion for court-approved notice. There is no need for the Court to define that standard now. Regarding the impact of the *Clark* decision on discovery in this case, the Defendant does not argue that additional discovery is not warranted. Defendant's real argument is that certain discovery which may be sought by Plaintiff should not be allowed because it is "unsupervised" or, in other words, because Defendant wants to limit access to potential witnesses.

Defendant, at first, argues that Plaintiff should not have names and contact information for the putative class because Plaintiff could "contact these individuals with unfettered opportunity." That is exactly what Defendant has been able to do since the inception of the case because it maintains those records. It would be prejudicial to allow Defendant an "unfettered opportunity" to contact potential witnesses but deny Plaintiff the exact same information. Defendant then fails to address the decisions in *Jones v. Ferro Corp.*, No. 1:22-cv-00253, 2023 WL 4456815 (N.D. Ohio July 11, 2023) and *McCall v. Soft-Lite, LLC*, No. 5:22-cv-00816, 2023 WL 4904023 (N.D. Ohio August 1, 2023), which stated that such discovery is not only appropriate, but required. Instead, Defendant dismisses the cases as "distinct" but fails to explain how they differ. After these

2

disingenuous arguments, Defendant finally gets to the real point and acknowledges that Plaintiff has a right to contact potential witnesses through "unsupervised methods." The distinction for Defendant is that it does not want to provide the names and contact information for potential witnesses because it would allow Plaintiff to investigate the claims with more efficiency. Response, p. 6 ("there is a significant difference between a door-to-door or telephone interview campaign to gather other employees, and defendant producing a list of contact information and giving plaintiff the ability to reach hundreds of individuals simultaneously"). The difference, for the Defendant, is that it wants to make it as hard as possible on Plaintiff to investigate the claims by denying him equal access to relevant information.

  With respect to pay and time records, Defendant argues that Plaintiff's position as a "runner" is dissimilar to that of "server" and he is not entitled to pay and time records for the servers. But that ignores the declarations submitted of two servers, Amanda Austin and Alexandria Penn regarding their duties. Simply because the named Plaintiff has one set of duties, it does not mean that another job classification did not experience the same work rules that resulted in wage law violations, because both classifications were required to perform side-work, together, before the restaurant was open and after it closed. The same argument applies to the relevance of the "ticket" times which recorded customer orders. Runners may not have entered orders in the point-of-sale system, but the records of that system will provide information on when tip-producing work was being performed by servers as well as runners. After all, a customer "ticket" records the start and stop times of tip-producing work for that customer, by both the server and runner. This information is highly relevant to the issue of whether runners and servers were paid a tip-credit wage (there is no dispute that they were) to perform non-tip producing work. Likewise, the time records, as compared to the open and closing times of the restaurant, are relevant. Defendant

confuses the inquiry and argues against the merits of the claims, i.e. the records do not reflect unpaid work. At this stage, we are only addressing which records are relevant to the current issue: is there a strong likelihood that Plaintiff and opt-in plaintiffs are similarly situated to the putative class. And when that issue is briefed and decided, Defendant's arguments about the factual merits of the claims will still not be appropriate because, again, the merits of the claims will not be addressed in a motion for court-approved notice. At this point, the Plaintiff is required to meet a heightened standard that did not exist when discovery was first conducted. To be fair, additional discovery must be allowed that goes to the issue of whether Plaintiff can show a strong likelihood that he is similarly situated to the putative class. Names of all runners and servers, contact information, pay records, time records, and customer "ticket" records are the best information to judge whether the putative class is similarly situated.

*Respectfully submitted,*

 /s/ Robert B. Kapitan
Robert B. Kapitan (0074327)
Anthony J. Lazzaro (0077962)
Lori M. Griffin (0085241)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
robert@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Don J. Foty (TX 24050022)
Admitted to the Northern District of Ohio
4409 Montrose Blvd., Ste. 200
Houston, Texas 77006
(713) 523-0001 - Telephone
(713) 523-1116 - Facsimile
dfoty@hftrialfirm.com

                        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2023, a copy of the foregoing was filed electronically. Notice will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

                        /s/ *Robert B. Kapitan*
                        One of the Attorneys for Plaintiff