UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ARMANI ADAMES, on behalf of himself and other similarly situated employees,** <br><br> Plaintiff, <br><br> v. <br><br> **RUTH'S HOSPITALITY GROUP, INC.,** <br><br> Defendant. | CASE NO. 1:22-CV-00036 <br><br> JUDGE CHARLES E. FLEMING <br><br><br><br><br> **MEMORANDUM OPINION AND ORDER** |

Before the Court is Plaintiff's Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs. (ECF No. 19-1). Defendant Ruth's Hospitality Group, Inc. timely opposed Plaintiff's Motion. (ECF No. 20-1). For the following reasons, Plaintiff's Motion for Court-Approved Notice to Potential Opt-in Plaintiffs is **DENIED**.

**I.    BACKGROUND**

  **a. Basic Facts**

Plaintiff was Defendant's employee at Defendant's Cleveland, Ohio restaurant location from October 2019 through March 2020. (ECF No. 19-2, PageID #158). During Plaintiff's employment, he alleges that he and other employees with the same job responsibilities were paid less than minimum wage for the hours worked as a runner and server.[1] Plaintiff claims to have performed several tasks constituting non-tipped "side work," consuming more than 20% of his time worked. (ECF No. 19-1, PageID #143–44). Plaintiff provides a non-exhaustive list of side work he claims to have performed, including:

---

[1] Plaintiff's declaration first describes his role with Defendant as a "server." (ECF No. 19-2, PageID #158–59). Later, Plaintiff describes himself as a runner. (ECF No. 19-6, PageID #167–69).

1

> [C]leaning and stocking the serving line; cleaning booths, chairs, and high chairs; cleaning menus; cleaning tables; filling and cleaning salt and pepper shakers; rolling silverware; setting tables; stocking ice; sweeping, cleaning and mopping floors; taking dishes and glasses from the tables to the kitchen; taking out trash; cleaning ledges; cleaning the kitchen; cleaning walls and items hanging on the walls; cleaning window blinds, windows and window sills; cleaning bathrooms; and/or washing trays, appliances; silverware, dishes and/or glasses.

(ECF No. 9, PageID #60–61). Plaintiff claims that he observed other employees engaging in a high volume of side work. (ECF No. 19-2, PageID #158–59). Defendant's Cleveland location closed permanently in 2020. (ECF No. 20-1, PageID #247).

Plaintiff alleges that he and potential opt-in plaintiffs were employed by Defendant as runners and servers at three Ohio locations: Cleveland, Columbus, and Cincinnati. (ECF No. 19-1, PageID #149). Plaintiff also claims that he and potential opt-in plaintiffs were paid hourly wages in addition to tips from customers, but asserts that Defendant engaged in unlawful pay practices by paying employees a tip-based wage for untipped "side work." (*Id.*). This practice purportedly applied to all servers and runners working the same shifts, resulting in the same pay practices across the three Ohio locations. (*Id.*). According to Defendant's internal policies and procedures relating to side work, duties vary by restaurant and are determined by individual restaurant managers. (ECF No. 19-12, PageID #183).

### b. Procedural Posture

Plaintiff filed his Complaint on January 7, 2022 (ECF No. 1), and his First Amended Complaint on March 17, 2022. (ECF No. 9). On June 9, 2022, Plaintiff moved this Court for conditional certification, expedited opt-in discovery, and court supervised notice to potential opt-in plaintiffs. (ECF No. 14). On June 16, 2022, this Court denied Plaintiff's motion without prejudice as premature. (ECF No. 15). This Court then set a case schedule, including a FLSA collective-based discovery deadline of August 31, 2022. (ECF No. 18, PageID #139). At the

request of the parties, this Court extended FLSA collective-based discovery cutoff to September 21, 2022, allowing Plaintiff to file a motion to issue notice to the FLSA collective by October 14, 2022. (Telephone Status Conference Minutes (Sept. 2, 2022)). At Plaintiff's request, this Court also set a deadline for Plaintiff to file any motion to toll the statute of limitations by October 3, 2022. (*Id.*).

On October 12, 2022, this Court held a Status Conference to address a discovery dispute between the parties. (Telephone Status Conference Minutes (Oct. 12, 2022)). Both parties complained that the other had withheld requested discovery: Plaintiff claimed that Defendant refused to produce contact information and pay and time records for Plaintiff's proposed collective, while Defendant claimed that Plaintiff refused to produce Plaintiff's declarants for properly noticed depositions. (*Id.*). This Court found the dispute to be untimely; neither party brought the discovery dispute to the Court's attention within the 10-day window prescribed by Local Rule 37.1, and therefore, the Court declined to permit additional collective-based discovery beyond the three months it had already permitted to either party. (*Id.*).

c. **Pending Motion**

On October 14, 2022, Plaintiff filed a second Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs. (ECF No. 19). Defendant timely opposed the Motion. (ECF No. 20). Plaintiff asks this Court to grant court-approved notice to: "All former and current runners and servers employed by Defendant Ruth's Hospitality Group, Inc. at its Ohio locations at any time during the three-year period prior to the filing of this action to the present." (ECF No. 19, PageID #149). On May 16, 2023, this Court entered an Order staying the case pending the decision in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir.

3

2023). (ECF No. 22). On May 19, 2023, the Sixth Circuit issued its decision in *Clark*. 68 F.4th at 1003.

The Court then requested, and the parties filed, supplemental briefing to address *Clark*'s impact on Plaintiff's Second Motion for Conditional Certification. (ECF Nos. 25–28). In Plaintiff's Supplemental Brief, he requests that this Court issue an order compelling Defendant to produce the same contact information and pay and time records that were the subject of the parties' untimely discovery dispute, and to equitably toll the statute of limitations until court-approved notice is issued to potential plaintiffs. (ECF No. 25). Defendant asks the Court to deny Plaintiff's Motion because the collective sought is overbroad, Plaintiff is not similarly situated to his proposed opt-ins, both of whom had different job titles and responsibilities than him, and arguing that this Court lacks jurisdiction to equitably toll the applicable statute of limitations for absent collective members. (ECF No. 26). Pursuant to *Clark*, the Court will construe Plaintiff's request for "conditional certification" as one for "notice," meaning court-approved notice to potential opt-in plaintiffs.

Plaintiff submitted declarations and affidavits of potential opt-in plaintiffs, Amanda Austin and Alexandria Penn. Amanda Austin worked for Defendant's Cleveland, Ohio location as a server, host, and key manager from February 2018 until March 2020. (ECF No. 19-14, PageID #188–97). Alexandria Penn worked for Defendant's Columbus, Ohio location from October 2019 until February 2020. (*Id.* at PageID #208–09). Unlike Cleveland, the Columbus and Cincinnati restaurant locations remain open for business. Notably, the declarations of Ms. Austin and Ms. Penn appear to be fill-in-the-blank forms and are identical in substance to Plaintiff's declaration,

4

except for the filled-in dates and employment locations.[2] (ECF Nos. 19-2, 19-3, 19-4, PageID #158–63). Ms. Austin and Ms. Penn also submitted affidavits to the Court; beyond highlighting the differences between "runner" and "server" job titles, Ms. Austin and Ms. Penn's affidavits are almost identical to one another, and strikingly similar in substance to Plaintiff's own affidavit.[3] (ECF Nos. 19-5, 19-6, 19-7, PageID #164–72).

## II. LEGAL STANDARD

Under the FLSA, employees may bring suit for violations of the statute on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Potential plaintiffs are permitted to join the suit if they "give [their] consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

In May 2023, the Sixth Circuit rejected the "lenient" or "modest factual showing" standard that had previously been required to prompt court-approved notice to members of a proposed collective. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023). Instead, the Court adopted a stricter standard, requiring FLSA plaintiffs to establish a "strong likelihood" that the plaintiff is similarly situated to potential opt-ins. *Id.* at 1011. This requires a FLSA plaintiff to show that he is similarly situated to his proposed collective members with a showing "greater than the one necessary to create a genuine issue of material fact, but less than the one necessary to show a preponderance." *Id.*

---

[2] Neither Amanda Austin not Alexandria Penn have filed a notice of consent to join the lawsuit as required by 29 U.S.C. § 216(b).

[3] With the exception of a few words or phrases, paragraphs 3 and 5–22 of Ms. Penn and Ms. Austin's affidavits are identical. When compared with Plaintiff's Affidavit, all three affidavits are organized in the same manner, follow the same pattern, and make the same allegations. In particular, paragraphs 3, 6, 8, 10–15, 17–19, 21, and 23 of Plaintiff's Affidavit are repeated in Ms. Penn and Ms. Austin's affidavits, but with slightly different phrasing.

This heightened standard is intended to avoid a former employee soliciting new but unrelated claims against his former employer, and it is derived from Supreme Court precedent encouraging judicial restraint in overseeing a notice-giving process. *Id.* at 1010. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). It is also consistent with the text-based rationale for adopting a heightened notice standard in FLSA cases expressed by the Fifth Circuit in *Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430, 434 (5th Cir. 2021). *Swales* embraced two interpretive principles when it arrived at its "rigorous scrutiny" standard for court-approved notice in a FLSA action:

> (1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those "similarly situated" may proceed as a collective; and (2) the Supreme Court's admonition that while a district court may "facilitat[e] notice to potential plaintiffs" for case-management purposes, it cannot signal approval of the merits or otherwise stir up the litigation.

*Id.* at 434. Pursuant to these principles, the Court now considers Plaintiff's Motion for Conditional Certification and Court Supervised Notice to Potential Opt-in Plaintiffs. (ECF No. 19).

### III. DISCUSSION

#### A. Discovery

Plaintiff claims that he is entitled to more discovery because of the higher burden established in *Clark*. (ECF No. 25, PageID #299–302). Defendant maintains that any request issued by Plaintiff to receive additional discovery post-*Clark* is moot because the Court found Plaintiff's demand for more FLSA collective-based discovery untimely under Loc. R. 37.1. (ECF No. 27, PageID #351).

District courts are afforded broad authority when adjudicating discovery-related matters. *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021). In *Durbin v. Founds. Health Sols., LLC*, No. 1:22-CV-01719, 2023 WL 6383709, at *1–2 (N.D. Ohio Sept. 29, 2023), another court in this district gave a FLSA plaintiff the option to conduct expedited discovery following *Clark*, but the plaintiff declined. After the motion for conditional certification was fully briefed and ultimately denied, the plaintiff moved for expedited discovery and sought to refile a motion for conditional certification. *Id.* at *2. The court, in its discretion, ultimately granted the request for expedited discovery, though it truncated the sought-after 90-day expedited discovery period to only 30 additional days. *Id.* at *3, *5. However, the court also observed that the plaintiff's first motion, which the parties fully briefed (including supplemental post-*Clark* briefs) and the court ruled upon in a lengthy opinion, appeared to be an "inconsequential try-out to test the waters." *Id.* at *4.

Other courts in this district have ordered discovery post-*Clark,* but under different procedural postures. In *Jones v. Ferro Corp.*, No. 1:22cv00253, 2023 WL 4456815, at *1 (N.D. Ohio July 11, 2023), the plaintiff moved for conditional certification, but later asked the court to strike the motion to permit the parties to engage in limited discovery. The court granted the motion and allowed the parties to conduct limited discovery on an expedited basis, but notably, no discovery had been permitted or conducted in the case prior to that date. *Id.* at *4–5. Similarly, in *McCall v. Soft-Lite, LLC*, No. 5:22-CV-816, 2023 WL 4904023, at *8 (N.D. Ohio Aug. 1, 2023), the parties agreed that more discovery was needed, since none had yet been conducted. *Id.* at *8. Notably, the *McCall* court did not read *Clark* as requiring early discovery; "Nor would it, since the 'district court has broad discretion under the rules of civil procedure to manage the discovery process and control their dockets." *Id.* at *7.

7

Plaintiff claims that both *Jones* and *McCall* require this Court to compel Defendant to produce additional discovery (ECF No. 25, PageID #299), but the rationale for doing so in those cases does not apply here. Unlike *Jones* and *McCall*, this Court gave the parties 90 days to exchange discovery before Plaintiff's motion for conditional certification was due. Although Plaintiff now claims that he needs contact information and pay and time records to meet *Clark*'s heightened standard, these are the same documents that Plaintiff sought in pre-*Clark* discovery, did not receive, and then failed to notify the Court about the discovery dispute until the period prescribed by this Court's Local Rules expired. Where *Durbin* begrudgingly gave the plaintiff a second bite at the apple following his discovery miscalculation, this Court declines to do the same.

Plaintiff currently possesses a comprehensive list of employees who worked for Defendant at all three Ohio locations, including whether they were runners or servers, their respective hourly rates, and their dates of employment. (ECF No. 19-13, PageID #184–87). Plaintiff also has voluminous records relating to his, Ms. Austin's, and Ms. Penn's clock-in and clock-out times that span the length of their respective employments with Defendant. (ECF No. 19-14, PageID #188–217). Because this Court has previously denied Plaintiff's discovery challenges and additional requests for discovery, and the parties do not agree on the necessity of discovery post-*Clark*, this Court is unwilling to indulge Plaintiff's second effort to obtain more discovery. The Court is also unwilling to render Plaintiff's Motion for Conditional Certification and Court-Supervised Notice (together with the parties' voluminous briefing and this Court's opinion) inconsequential. *E.g.*, *Durbin v. Founds. of Health Sols., LLC*, No. 1:22-cv-01719, 2023 WL 6383709, *4 (N.D. Ohio Sept. 29, 2023). Therefore, Plaintiff's request for additional discovery is **DENIED.**

B.     **Court-Approved Notice**

Plaintiff alleges that his and potential opt-in plaintiffs' claims involve the same issues of law and fact about whether Defendant had a FLSA-violating policy of taking tip-credit when Plaintiff performed non-tip producing side work. (ECF No 19-1, PageID #149–52). Plaintiff asserts that this applies to servers and runners at Defendant's Cleveland, Columbus, and Cincinnati locations. (ECF No. 19-1, PageID #149). Defendant responds that the roles of runners and servers are fundamentally different, and that Plaintiff has presented no evidence of a uniform policy across the three Ohio locations. (ECF No. 27, PageID #355).

Opt-in plaintiffs are similarly situated to a named plaintiff if "they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed. Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds, Campbell-Edward Co. v. Gomez*, 577 U.S. 153 (2016). To establish whether another employee is similarly situated to the plaintiff, the plaintiff must allege "facts sufficient to support an inference that she has actual knowledge about other employee's job duties, pay structures, hours worked, and whether they were paid overtime hours." *Foley v. Wildcat Invs., LLC*, No. 2:21-CV-5234, 2023 WL 4485571, at *3 (S.D. Ohio July 12, 2023) (quoting *O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-22, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013); *Gaffers v. Sitel Worldwide Corp.*, No. 3-16-0128, 2016 WL 3137726, at *3 (M.D. Tenn. June 6, 2016) (holding that "even under the applicable 'lenient' standard[,]" plaintiff's lack of personal knowledge disproved that other employees were similarly situated); *see Shoemo-Flint v. Cedar Fair, L.P.*, No. 3:22-CV-1113, 2023 WL 4235541, *3 (N.D. Ohio June 28, 2023) (granting defendant's motion to strike when plaintiff failed to allege facts concerning how

plaintiff knew others were similarly situated by performing the same side work for similar durations).

District courts, however, cannot make similarly-situated determinations regarding employees who have not formally joined the plaintiff's suit. *Jones v. Ferro Corp.*, No. 1:22-CV-00253, 2023 WL 4456815, at *3 (N.D. Ohio July 11, 2023) (citing *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009–10 (6th Cir. 2023)). This is because "[w]hether other employees are similarly situated for the purpose of joining a FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Id.* (citing *Clark*, 68 F.4th at 1009–10). An employer may also have differing defenses against absent employees, like an arbitration agreement or applicable statutes of limitation, that would render those absent employees too dissimilar to the plaintiff to receive notice of the suit. *Id.* (citing *Clark*, 68 F.4th at 1009–10). Therefore, the Court looks to the declarations and affidavits Plaintiff filed alongside his motion to determine whether notice should be issued, and if so, to whom.

### 1. Defendant's Cincinnati Location

Plaintiff claims that the alleged violations of the FLSA tip-credit provision transpired at Defendant's Cincinnati location; thus, employees from that location should be able to join as similarly situated opt-in plaintiffs. (ECF No. 19-1, PageID #149). Defendant counters that Plaintiff does not have personal knowledge of the Cincinnati location's policies, and that the location operates independently from the other locations. (ECF No. 20-1, PageID #230–31).

Plaintiff has not produced evidence of a FLSA-violating policy at Defendant's Cincinnati location; neither Plaintiff, Amanda Austin, nor Alexandra Penn has personal knowledge of the policies in place at the Cincinnati location because none of them worked there. Plaintiff testified

at his deposition that he has never spoken with anyone who worked at either of Defendant's Columbus or Cincinnati locations. (ECF No. 20-1, PageID #249–50). The two potential opt-in plaintiffs also present no personal knowledge of the Cincinnati location. Alexandria Penn possesses knowledge of the Columbus location, but stated that she is unaware of other employees or policies outside of Columbus. (ECF No. 19-4, PageID #162–66). Amanda Austin also indicated no personal knowledge of other employees or policies outside of the Cleveland location. (ECF No. 19-3, PageID #160–61; 19-7, PageID #170–72). The only evidence about the Cincinnati location's policies is the position descriptions Plaintiff filed in support of his motion, but those descriptions state that side work varies by restaurant and instructs employees to "PLEASE SEE YOUR MANAGER FOR SIDEWORK RESPONSIBILITIES RELATING TO YOUR POSITION." (ECF No. 19-12, PageID #183).

Without evidence of the Cincinnati location's policies or practices before the Court, including the Cincinnati location's employees for purposes of court-approved notice is improper. Therefore, Cincinnati runners and servers will not receive court-approved notice of this action.

        2. **Defendant's Columbus Location**

Plaintiff next argues that Defendant's Columbus employees are similarly situated to him via Alexandra Penn's declaration and affidavit. (ECF No. 19-4, PageID #162–63; ECF No. 19-5, PageID #164–66). Defendant argues that Plaintiff is not similarly situated to the Columbus location's employees because the Columbus location operated under different managers and policies. (ECF No. 20, PageID #238). Defendant further asserts that Plaintiff is not similarly situated because Plaintiff was subject to different tip-credit policies under a 2018 Department of Labor ("DOL") Opinion Letter, which changed the longstanding "80/20" tip-credit rule. (*Id.* at

239).  Defendant further claims that the tip-credit policy changed again when the Department of Labor reinstated the "80/20" tip-credit rule.  (*Id.*).

The FLSA requires employers to pay their employees at least $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  Tipped employees are subject to different pay requirements.  An employer must pay a tipped employee:

> (i) the cash wage paid such employee which for purposes of such determination shall not be less than the cash wage required to be paid such an employee on August 20, 1996; and
> (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title."

29 U.S.C. 203(m)(2)(A).  An hourly wage less than $7.25 per hour is the result of an employer taking a "tip credit" under the FLSA.

When a tipped employee also performs non-tipped work, she is protected by the FLSA dual-jobs provision; an employer may only claim a tip credit against wages earned while performing tipped work.  29 U.S.C. § 206(a)(1)(C)(ii).  "Until December 28, 2021, the dual-jobs provision further explained that employers could still take a tip credit against wages owed to, for example, a server who spent 'part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses . . . ."  *Goeble v. Burntwood Tavern Holdings, LLC*, No. 1:22-cv-01733, 2023 WL 3092645, at *2 (N.D. Ohio Apr. 26, 2023) (quoting 29 C.F.R. § 531.56 (effective through Dec. 27, 2021)).  Historically, employers could claim the tip credit so long as an employee spent less than 20% of work hours performing untipped, related duties.  *Id.* (citing *Callaway v. DenOne LLC*, No. 1:18-cv-01981, 2019 WL 1090346, at *6 (N.D. Ohio Mar. 8, 2019) (awarding *Auer* deference to the Department of Labor's Field Operations Handbook, and citing Dep't of Labor, *Field Operations Handbook*, 30d00(f)(2) & (3) (Dec. 9, 1988)).

In 2018, the DOL issued an opinion letter informing employers that they "could take a tip credit against any amount of time that tipped employees spent doing untipped work categorized as "core" or "supplemental" tasks in [the Occupational Information Network], provided the untipped work was 'performed contemporaneously with . . . or for a reasonable time immediately before or after' tipped work." *Id.* (quoting *Callaway*, 2019 WL 1090345, at *6); U.S. Dep't of Labor, Wage & Hour Div., *Opinion Letter FLSA2018-27* (Nov. 8, 2018). Then, in 2021, the DOL promulgated new dual-jobs provisions applicable to tipped employees. *Id.*; 29 C.F.R. § 531.53(f). From 2021 to the present, employers can only take a tip credit for a tipped employee's non-tipped, directly supporting work (such as refilling condiment containers, rolling silverware, folding napkins, and stocking workstations) amounting to 20% or fewer of the employee's worked hours, or for any continuous period of time less than 30 minutes. 29 C.F.R. § 531.53(f)(4)(i). Although this is similar to the "80/20" rule addressed in the 1988 Field Operations Handbook, the new "80/20" rule "redrew the line between directly supporting work and unrelated work. For example, although the old rule permitted employers to claim a tip credit when servers, for example, toasted bread or made coffee, the new regulation states that preparing food . . . is not part of the tipped occupation of a server." *Id.* (comparing historical versions of applicable statutes) (cleaned up).

Alexandra Penn has personal knowledge of the Columbus location's employees and policies for the five months she worked there. (ECF No. 19-4, PageID #162–66) (describing her term of employment with Defendant as occurring "between September 2019 and January 2020"). Ms. Penn's employment overlapped with Plaintiff's, yet Plaintiff's proposed collective would extend from January 7, 2019, to "the present," which is now April, 2024. (ECF No. 9, PageID #64). This presents two problems to the Court: (1) Because the Columbus location remains open for business, Ms. Penn lacks personal knowledge of the Columbus locations operations after she

13

left in 2020; and (2) issuing notice to post-December-2021 Columbus employees means that some noticed employees would be subject to different tip-credit regulations than Plaintiff.

At minimum, the Court has before it no evidence based on personal knowledge of the Columbus location's policies or procedures after January 2020. Plaintiff's sought-after notice pool extends well beyond that date, and the job descriptions accompanying Plaintiff's motion suggest that side work "varied by restaurant" and were determined by individual location managers. (ECF No. 19-12, PageID #183). Moreover, the Court is unwilling, in its discretion, to issue notice to Defendant's current or former Columbus-location employees subject to different tip-credit rules than Plaintiff, regardless of whether the 2018 Opinion Letter deserves deference.[4] Such employees cannot be said to be similarly-situated to plaintiff, because Defendant would likely assert different defenses against plaintiffs subject to different regulations. *See Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009–10 (6th Cir. 2023) (observing that employees subject to different defenses than the plaintiff in a FLSA action are unlikely to be similarly situated to the plaintiff).

For these reasons, Plaintiff's request to send court-approved notice to individuals employed at the Columbus restaurant location between January 2019 and March 2024 lacks merit.

---

[4] Since the 2018 Opinion Letter was published, federal courts have been tasked with determining whether it is entitled to *Auer* or *Skidmore* deference. Courts in this district, applying the framework set out in *Kisor v. Wilkie*, 588 U.S. ----, 139 S.Ct. 2400 (2019), have declined to defer to the 2018 Opinion Letter. *E.g.*, *Goeble v. Burntwood Tavern Holdings*, No. 1:22-cv-01733, 2023 WL 3092645, at *2 (N.D. Ohio Apr. 26, 2023); *O'Neal v. Denn-Ohio LLC*, No. 3:19-cv-00280, 2020 WL 210801. In *O'Neal*, Judge Helmick authored a thoughtful opinion declining to award either *Auer* or *Skidmore* deference to the 2018 Letter because the 2018 guidance (1) "would lead to results inconsistent with the purpose of the dual jobs regulation"; and (2) "represent[ed] a stark change to the approach the DOL adhered to for decades . . . ." 2020 WL 210801, at *6–7. For the purpose of this Order, this Court need not conclusively determine whether it will defer to the 2018 Opinion Letter; whether or not the 2018 Opinion Letter is given deference, Plaintiff's proposed notice pool would still be the subject of two different regulations: either the pre- and post-December-2021 formal rules, or the 2018 Opinion Letter and the post-December-2021 rule. A pronouncement on the 2018 Opinion Letter's weight is unnecessary to render a decision on Plaintiff's motion.

### 3. Defendant's Cleveland Location

Plaintiff asserts that he is similarly situated to Amanda Austin, who was a server the Cleveland location from February 2018 to March 2020. (ECF No. 19-1, PageID #149). Defendant concedes that Plaintiff and Ms. Austin are likely "similarly situated" under *Clark*, but argues that notice should only be given to runners, not servers. (ECF No. 20, PageID #240).

Pre-*Clark*, it was not uncommon for district courts to "conditionally certify collectives" based on a single affidavit or declaration if that document "set forth sufficient facts" tending to show that the proposed employee pool is similarly situated to the plaintiff. *Rashad v. Mason's Pro. Cleaning Serv., LLC*, No. 2:22-CV-02635, 2023 WL 5154534, at *3 (W.D. Tenn. Aug. 10, 2023) (quoting *Rembert v. A Plus Home Health Care Agency LLC*, No. 2:17-CV-287, 2018 WL 2015844, at *2 (S.D. Ohio May 1, 2018)). The level of detail needed in a single affidavit or declaration, however, is more demanding post-*Clark*. *Rashad*, 2023 WL 5154534, at *3. *See O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-22, 2013 WL 4013167, at *7 (S.D. Ohio Aug. 6, 2013) (holding that mere restatement of the complaint does not satisfy the now outdated "modest showing" standard).

*Rashad* describes circumstances like those before this Court: there, two plaintiffs filed their respective declarations, which were nearly identical. 2023 WL 5154534, at *1. The court found that the declarations relied primarily on the plaintiffs' own experiences and gave only general, vague references to the other employees. *Id.* at *3. The declarations' details were allegations found in the complaint, with sparse supporting evidence. *Id.* The court declined to issue notice based on the declarations, because they did not "allege facts sufficient to support an inference that [the plaintiff] has actual knowledge about other employees' job duties, pay structures, hours

15

worked, and whether they were paid for overtime hours." *Id.* (quoting *Foley v. Wildcat Invs., LLC*, No. 2:21-CV-5234, 2023 WL 4485571, at *3 (S.D. Ohio July 12, 2023)).

Plaintiff relies on Ms. Austin's affidavit in his argument for court-approved notice, but the affidavit adds little information, besides being a server, not found in the factual allegations of the Complaint. (*See* ECF No. 19-1, PageID #149; ECF No. 19-3, PageID #162–63). In fact, Ms. Austin's declaration is almost identical to Plaintiff's own declaration, apart from highlighting numerous, relevant differences between runners and servers. (*See* ECF No. 19-2, PageID #158–59; ECF No. 19-3, PageID #160–61). For example, it appears that runners had to be at work earlier than servers. (ECF No. 19-7, PageID #170, ¶ 6 (explaining that, when Ms. Austin typically arrived at work, "the runners were already doing their side-work and the other servers were arriving at the same time as me")). Servers also had discreet, customer-facing duties that clearly established their tipped versus non-tipped work. (*Id.* at PageID #171, ¶¶ 13–14 (stating that a ticket opened when drink orders were taken, and that "the time the ticket was opened . . . is the start of when I performed tip work")). For runners, the start and end of tipped work was less clear. (ECF No. 19-6, PageID #168, ¶ 13 ("When the first table arrived, it was assigned to a server and only that server would begin tip work. Certain runners would also start tip work but not all of them")).

The differences between runners and servers exposed in Plaintiff's and Ms. Austin's affidavits render runners and servers dissimilarly situated for the purposes of this action. With regard to the Cleveland location, generally, Ms. Austin's affidavit also recites much of Plaintiff's Complaint, providing no new, relevant factual matter for the Court to consider. (ECF No. 9; ECF No. 19-3, PageID #162–63). Under these circumstances, the Court finds that court-approved notice to Defendant's Cleveland employees is not supported by the evidence before the Court.

Having determined that court-approved notice should not issue to Defendant's Cincinnati, Columbus, or Cleveland locations, Plaintiffs motion for court approved notice (ECF No. 19) is **DENIED**. Plaintiff has not established, by means more demanding than that which is necessary to "create a genuine issue of fact, but less than one necessary to show a preponderance," that his FLSA claim extends beyond himself. *See Clark v. A&L Homecare & Training Ctr.*, 68 F.4th 1003, 1011 (6th Cir. 2023) (expressing the new evidentiary standard applicable to Plaintiff's motion). Because court-approved notice will not issue for Defendant's three Ohio locations, the Court need not determine proper methods of issuing said notice.

### C. Equitable Tolling

Plaintiff asserts that *Clark* authorizes district courts to grant equitable tolling of 29 U.S.C. § 216(b)'s two-year statute of limitations to potential opt-in plaintiffs who are not yet parties to Plaintiffs action. (ECF No. 25, PageID #302). Plaintiff further contends that denying equitable tolling to potential opt-in plaintiffs limits the ability for Plaintiff to gather potential opt-in plaintiffs for his case. (*Id.* at PageID #303). Defendant notes that the *Clark* majority was silent on the issue of equitable tolling (ECF No. PageID #334), and argues that granting equitable tolling to potential opt-in plaintiffs would constitute an impermissible advisory opinion; Defendant challenges Plaintiff's standing to raise the issue of equitable tolling for potential opt-in plaintiffs and cites to both *Jones* and *McCall*. (ECF No. 27, PageID #358–59). Plaintiff does not address these standing concerns in his Reply Brief. (*See* ECF No. 28).

The Court agrees that Plaintiff does not have standing to equitably toll the statute of limitations for the potential opt-in plaintiffs. The *Clark* majority makes no mention of equitable

17

tolling, and the concurring and dissenting opinions lack authoritative weight.[5] Both *Jones* and *McCall* rejected the plaintiff's motion for equitable tolling for absent potential opt-in plaintiffs. *Jones v. Ferro Corp.*, No. 1:22-CV-00253, 2023 WL 4456815, at *7 (N.D. Ohio July 11, 2023) (referring to the plaintiff's request to equitably toll the statute of limitations for potential opt-ins as "premature"); *McCall v. Soft-Lite, LLC*, No. 5:22-CV-816, 2023 WL 4904023, at *11 (N.D. Ohio Aug. 1, 2023) ("[The plaintiffs] have no standing to raise the issue on behalf of *potential* plaintiffs because, as pointed out by the court in *Clark*, this FLSA action is not representative[.]") (emphasis original) (cleaned up).

Indeed, a FLSA action is not representative; "all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action." *Clark*, 98 F.4th at 1009. Non-parties must present themselves to the court—through Rule 24 Intervention or, relevant here, through the FLSA's opt-in rules—before they have standing to issue requests the court can grant. *See, e.g.*, *Shults v. Chapion Intern. Corp.*, 35 F.3d 1056, 1061 (6th Cir. 1994), *abrogated on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2005) (explaining that non-parties typically acquire standing upon intervention). Plaintiff lacks standing to raise the issue of equitable tolling on behalf of *potential* opt-in plaintiffs because it would adjudicate rights and responsibilities with respect to individuals not within the court's jurisdiction. *See McCall v. Soft-Lite LLC*, No. 5:22-cv-00816, 2023 WL 4904023, at *11 (N.D. Ohio Aug. 1, 2023) ("[U]ntil this Court has jurisdiction over a particular party who has opted in, any ruling on equitable tolling with respect to such party's

---

[5] Judge Bush discusses equitable tolling in his concurring opinion, stating: "I fully join the majority opinion but write separately because equitable tolling should be made available for plaintiffs in collective actions under the [FLSA]." *Clark v. A&L Homecare & Training Ctr.*, 68 F.4th 1003, 1015 (6th Cir. 2023). Equitable tolling is also mentioned in Judge White's partial dissent. *Id.* at 1017 ("I thus agree with Judge Bush that, given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs.").

claim would be a prohibited advisory ruling."). Therefore, Plaintiff's request for equitable tolling on behalf of potential opt-in plaintiffs is **DENIED**.

## IV. CONCLUSION

Plaintiff's request for additional post-*Clark* discovery is **DENIED** for the reasons herein stated. Additionally, court-approved notice is improper because Plaintiff has not met his burden of showing personal knowledge of a FLSA-violating policy across Defendant's three Ohio locations. The request for court-approved notice is **DENIED**. Finally, Plaintiff does not have standing to request equitable tolling of the applicable statute of limitations for potential opt-in plaintiffs, and his request for same is **DENIED**. Accordingly, Plaintiff's Motion for Court-Approved Notice (ECF No. 19) is **DENIED.**

**IT IS SO ORDERED.**

Date: April 9, 2024.

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**